UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ABDELAZIZ BENNOUR, | ) | |
|     Petitioner | ) | |
| | ) | |
| v. | ) | |
| BRUCE CHADBOURNE, FIELD OFFICE | ) | Civil No. 04-CV-12149-MLW |
| DIRECTOR, BUREAU OF | ) | |
| IMMIGRATION AND CUSTOMS | ) | |
| ENFORCEMENT, UNITED STATES | ) | |
| DEPARTMENT OF HOMELAND | ) | |
| SECURITY | ) | |
|     Respondent | ) | |

**Petitioner's Memorandum In Response to
November 15, 2004 Court Order**

I.   Introduction

    Pursuant to the Court's order of November 15, 2004, the Petitioner hereby submits the instant memorandum addressing (1) what prejudice, if any, resulted from the Board of Immigration Appeals' ("BIA", herein) decision not to reopen the Petitioner's appeal and (2) the implications for this matter of the cases styled Liu v. I.N.S., 293 F.3d 36 (2d Cir.2002), Chmakov v. Blackman, 266 F.3d 210 (3d Cir.2001), Ven v. Ashcroft, 386 F.3d 357 (1st Cir.2004), Awe v. Ashcroft, 324 F.3d 509 (7th Cir.2003), Hernandez v. Reno, 238 F.3d 50 (1st Cir.2001), and Sayyah v. Farquharson, 382 F.3d 20 (1st Cir.2004). Additionally, in response to the Court's Order, the Petitioner has submitted an affidavit explaining why he did not seek review of the BIA's July 11, 2004 decision not to reopen

his appeal in the First Circuit Court of Appeals within 30 days and what prejudice, if any, resulted from the BIA's decision not to reopen his appeal.[1]

The Petitioner advocates two main contentions herein: (1) according to the Supreme Court decision styled I.N.S. v. St. Cyr, 533 U.S. 289, 292, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), as well as the Second Circuit's decision in Liu and the Third Circuit's decision in Chmakov, the Court possesses subject matter jurisdiction over the instant habeas petition, and (2) the withdrawal of the Petitioner's appeal to the BIA by some third party, without the Petitioner's knowledge or consent, constituted a violation of his Fifth Amendment right to due process, and he has been prejudiced by the fundamentally unfair process which to date has governed his deportation proceedings.

With regard to the first contention, St. Cyr, Liu and Chmakov establish that an alien (criminal or non-criminal) is not required to file an appeal with the court of appeals as a condition precedent to filing a writ of habeas corpus pursuant to 28 U.S.C. §2241. In short, while non-criminal aliens clearly have an avenue of judicial review of BIA decisions, i.e., an appeal within thirty days to the court of appeals pursuant to 8 U.S.C. §§1252(b)(1), (2), the Supreme Court has clearly held that habeas corpus relief can not be stripped by legislative action unless there has been "a clear statement of congressional intent to repeal habeas jurisdiction," St. Cyr, 533 U.S. at 298, 121 S.Ct. at 2278, and "it is now beyond dispute that Congress did not explicitly state its intention to repeal the district courts' 28 U.S.C. §2241 jurisdiction over habeas petitions filed by aliens subject to a final order of removal" when it enacted the Antiterrorism and Effective Death

---

[1]. The affidavit has been prepared by counsel based on conversations with the Petitioner, which have been difficult given his limited English. Counsel has withheld obtaining the Petitioner's signature on the affidavit until it can be interpreted for the Petitioner such that there is no mistaking the true meaning of Petitioner's statements.

Penalty Act of 1996 ("AEDPA", herein) and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA", herein), regardless of whether they appealed to the court of appeals, Chmakov, 266 F.3d at 214, citing St. Cyr, 533 U.S. at 314, 121 S.Ct. at 2287. See Liu, 293 F.3d at 40-41 (holding, in matter of first impression, that Congress had preserved the right to habeas review for both criminal and non-criminal aliens). Wherefore, because Congress has not explicitly stated its intention to preclude habeas review, this Court has jurisdiction to consider the instant §2241 petition, notwithstanding the Petitioner's failure to avail himself of the judicial review provided for by 8 U.S.C. §§1252(b)(1), (2).

II.     Argument.

a.      *St. Cyr, Liu and Chmakov establish that an alien is not required to file an appeal with the court of appeals as a condition precedent to filing a writ of habeas corpus pursuant to 28 U.S.C. §2241 claiming a due process violation.*

While the Court has inquired regarding the impact of Liu and Chmakov on the instant proceedings, a thorough analysis of the jurisdiction issue should begin with the Supreme Court's decision in I.N.S. v. St. Cyr, 533 U.S. 289, 292, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), which formed the backbone of both Liu and Chmakov. At issue in St. Cyr, insofar as relevant to this case, were the effects of the AEDPA and the IIRIRA, both of which contain comprehensive amendments to the Immigration and Nationality Act ("INA"), and whether they stripped the district courts of jurisdiction to hear habeas corpus petitions pursuant to 28 U.S.C. §2241. St. Cyr, 533 U.S. at 292. St. Cyr was a citizen of Haiti admitted to the United States as a lawful permanent resident who pleaded guilty in a state court to a charge of selling a controlled substance in violation of Connecticut law (his guilty plea occurred before the 1996 enactments, the deportation

3

proceedings were instituted after the 1996 amendments). St. Cyr, 533 U.S. at 293. In a habeas petition, St. Cyr argued that the restrictions on discretionary relief from deportation contained in the 1996 statutes did not apply to removal proceedings brought against an alien who pleaded guilty to a deportable crime before their enactment. Before reaching the substantive issue of whether the amendments could be applied retroactively to St. Cyr, the Supreme Court first addressed the procedural question of whether §2241 was still available to St. Cyr after the amendments. While the district court held, and the court of appeals agreed, that it had jurisdiction to answer the substantive question in a habeas corpus proceeding, the I.N.S. argued to the Supreme Court, like here, that four sections of the 1996 statutes stripped the district court of jurisdiction to decide the question of law presented by St. Cyr's habeas corpus application. St. Cyr, 533 U.S. at 298.

In rejecting all of the I.N.S.' arguments, the Supreme Court first noted that for "the I.N.S. to prevail it must overcome both the strong presumption in favor of judicial review of administrative action and the longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction." St. Cyr, 533 U.S. at 298. After conducting a comprehensive examination of the historical use of habeas corpus to remedy unlawful Executive action, and observing that "[a]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest", the Court held that "to conclude that the writ is no longer available in [the context of that case] would represent a departure from historical practice in immigration law", as the "writ of habeas corpus has always been available to review the legality of Executive detention." St. Cyr, 533 U.S. at 301,

303-305. After noting the strong historical roots of habeas corpus as a means to review the legality of Executive detention, the Court focused upon and rejected the specific provisions cited by the I.N.S. (including 8 U.S.C. §§1252(a)(1), 1252 (a)(2)(C), and 1252(b)(9)) that purportedly expressed a clear and unambiguous statement of Congress' intent to bar petitions brought under §2241. St. Cyr, 533 U.S. at 308-309.

In rejecting I.N.S.' argument that §§1252(a)(1), (a)(2)(C), and (b)(9) expressed such a clear and unambiguous intent, the Court first noted that the "term 'judicial review' or 'jurisdiction to review' is the focus of each of these three provisions" and that "[i]n the immigration context, 'judicial review' and habeas corpus' have historically distinct meanings." St. Cyr, 533 U.S. at 311, citing Heikkila v. Barber, 345 U.S. 229, 236, 73 S.Ct. 603, 97 L.Ed. 972 (1953) ("it is the scope of inquiry on habeas corpus that differentiates" habeas review from "judicial review"); Terlinden v. Ames, 184 U.S. 270, 278, 22 S.Ct. 484, 46 L.Ed. 534 (1902) (noting that under the extradition statute then in effect there was "no right of review to be exercised by any court or judicial officer," but that limited review on habeas was nevertheless available). The Court then concluded:

> Both §§1252(a)(1) and (a)(2)(C) speak of "judicial review"—that is, full, nonhabeas review. Neither explicitly mentions habeas, or 28 U.S.C. §2241. Accordingly, neither provision speaks with sufficient clarity to bar jurisdiction pursuant to the general habeas statute.

St. Cyr, 533 U.S. at 312-13. The Court also rejected I.N.S.'s reliance on 8 U.S.C. §1252(b)(9), which it identified as a "zipper clause" and whose purpose was "to consolidate 'judicial review' of immigration proceedings into one action in the court of appeals, but it applies only 'with respect to review of an order of removal under

5

subsection (a)(1).'" St. Cyr, 533 U.S. at 313, quoting 8 U.S.C. §1252(b). The Court concluded:

> Subsection (b)(9) simply provides for the consolidation of issues to be brought in petitions for "judicial review," which, as we noted above, is a term historically distinct from habeas. It follows that §1252(b)(9) does not clearly apply to actions brought pursuant to the general habeas statute, and thus cannot repeal that statute either in part of in whole.

St. Cyr, 533 U.S. at 313-14.

In short, in St. Cyr, the Supreme Court held that stripping habeas corpus jurisdiction requires "a clear statement of congressional intent" and that none of the provisions cited by the I.N.S. in that case (i.e., the exact provisions cited by the Respondent in the instant case) constituted a clear and unambiguous statement of Congress' intent to bar petitions brought under §2241. While the Respondent has argued, as he must, that St. Cyr is distinguishable because the Petitioner herein, a non-criminal alien, has the right to appeal the BIA's denial to the First Circuit Court of Appeals, and therefore has a forum of review, such an argument overlooks the Supreme Court's clear admonishment that to prevail the I.N.S. "must overcome both the strong presumption in favor of judicial review of administrative action and the longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction." St. Cyr, 533 U.S. at 298 (emphasis added). Indeed, this is precisely the point made by Liu and Chmakov, both of which rejected the argument advanced by the Respondent in this case.

In Liu, the petitioner applied for asylum and withholding of deportation, the immigration judge rejected Liu's application, Liu timely appealed to the BIA, which affirmed the immigration judge's decision on December 2, 1998. Liu, 293 F.3d at 38-39. Liu failed to timely appeal the BIA decision to the Second Circuit, and thus her appeal to

6

that court was dismissed and her petition for rehearing was denied on July 16, 1999. Liu, 293 F.3d at 38. On January 3, 2000, Liu filed a *pro se* complaint in federal court alleging violations of her rights under the Fourteenth Amendment, which was construed by the court as a petition for a writ of habeas corpus. Liu, 293 F.3d at 38. The district court dismissed Liu's petition for want of jurisdiction, ruling that Liu's sole means to obtain review of the BIA's decision consisted of a direct appeal to the court of appeals, and Liu appealed that dismissal to the Second Circuit. Liu, 293 F.3d at 38.

Observing that the "post 1996 availability of §2241 habeas jurisdiction over petitions filed by non-criminal aliens is a matter of first impression," the Second Circuit held that Congress had preserved the right to habeas review for both criminal and non-criminal aliens, and it therefore reversed the district court's dismissal of the petition for want of jurisdiction and remanded for further proceedings consistent with the opinion, notwithstanding that Liu failed to avail herself of her right to appeal the BIA's decision to the Second Circuit within 30 days of the BIA decision. Liu, 293 F.3d at 40-41. In so holding, the Second Circuit relied upon St. Cyr, noting that the Supreme Court held therein that "in the immigration context, 'judicial review' and 'habeas corpus' have historically distinct meanings", and that the 1996 amendments refer to "judicial review," not habeas corpus. Liu, 293 F.3d at 39, quoting St. Cyr, 533 U.S. at 312-14, 121 S.Ct. 2271. Noting that St. Cyr "held as a matter of statutory construction that 'habeas jurisdiction under §2241 was not repealed by AEDPA and IIRIRA'", see St. Cyr, 533 U.S. at 314, 121 S.Ct. 2271, the Second Circuit held that the Supreme Court's construction of those statutes compelled the conclusion that "Congress has preserved the right to habeas review for both criminal and non-criminal aliens." Liu, 293 F.3d at 40-41. "Because St.

7

Cyr held that jurisdiction pursuant to 28 U.S.C. §2241 survives the changes to the INA effected by AEDPA and IIRIRA," the Second Circuit concluded "that the federal courts retain habeas corpus jurisdiction over §2241 petitions filed by aliens regardless of their status or the reason for their removability." Liu, 293 F.3d at 41.

In so holding, the Second Circuit relied upon and drew support from the Third Circuit's decision in Chmakov, wherein the Third Circuit reversed the district court's dismissal of the petitioner's habeas petition for want of jurisdiction, despite the fact that the petitioners had repeatedly failed to avail themselves of their right to appeal to the court of appeals from various BIA orders. Indeed, in Chmakov, the Third Circuit rejected the very argument posited by the Respondent in this case:

> The I.N.S. asserts that the rule of [St. Cyr, Zadvyadas v. Davis, 533 U.S. 678, 121 S.Ct. 2491 (2001), Liang, v. I.N.S., 206 F.3d 308, 317 (3d Cir.2000) and others] is only applicable where the alien had no other avenue to seek review of the removal order. Unlike the aliens in Zadvydas, St. Cyr, Liang, and Sandoval, the Chmakovs had the right to seek direct review in this Court of the removal order and the denial of their asylum claim. On that basis, the I.N.S. contends that the Chmakovs should not also be given an opportunity to seek review of their claim by means of a habeas petition …Because Congress did not explicitly state its intention to preclude habeas review, the District Court wrongly determined it lacked jurisdiction.

Chmakov, 266 F.3d at 213, 216. In Chmakov, the immigration judge denied the Chmakovs' (husband, wife and son) application for political asylum, the Chmakovs filed a notice of appeal in the BIA, their then-attorney failed to file a timely brief, the BIA denied counsel's motion to file a late brief, and the BIA dismissed the appeal on January 14, 2000. Chmakov, 266 F.3d at 212. The Chmakovs, still represented by same counsel, failed to file an appeal with the Third Circuit Court of Appeals. Chmakov, 266 F.3d at 212. Thereafter, the immigration judge reopened the matter to set a voluntary departure

8

bond and set the departure date, but, again, no appeal to the Third Circuit was taken by the Chmakovs from that order. Chmakov, 266 F.3d at 212. On August 22, 2000, after having retained new counsel, the Chmakovs appealed the January 14, 2000 BIA dismissal to the Third Circuit, but that appeal was dismissed as untimely. Chmakov, 266 F.3d at 212-213. On April 24, 2000, the Chmakovs filed a petition for writ of habeas corpus in the district court, alleging that their Fifth Amendment right to due process had been violated because they received ineffective assistance of counsel before the BIA; the I.N.S. successfully moved to dismiss for lack of subject matter jurisdiction and a timely notice of appeal was filed. Chmakov, 266 F.3d at 213.

Noting that prior to 1996 an alien challenging a deportation order on the basis of an alleged due process violation would unequivocally have had the right to seek habeas relief in district court, and that following St. Cyr "it is incontrovertible that aliens being deported on the basis of certain criminal convictions would still have that right", the Third Circuit opined that it saw "no reason to conclude that non-criminal aliens should be treated differently." Chmakov, 266 F.3d at 213. The Third Circuit first observed that the Supreme Court "made it quite clear that there are two rationales in support of the conclusion that habeas is preserved for aliens subject to a final order of deportation", the first being "the strong presumption in favor of judicial review of administrative action" and the second being "the longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction." Chmakov, 266 F.3d at 213. The Third Circuit therefore ruled that it could not find the district court lacked jurisdiction without first finding that "there was another avenue for review of the BIA's decision and that Congress had clearly stated its intention to strip district courts of power to hear petitions

such as this." Chmakov, 266 F.3d at 213-214 (emphasis in original). Noting that the first rationale was "admittedly not at issue [] because it is acknowledged by all parties that the Chmakovs had the right to seek review in this Court of the BIA's decision to dismiss their claim for asylum and order them deported", the court turned its attention to the second rationale and framed the issue as "whether Congress explicitly stated its intention to remove" habeas jurisdiction:

> The answer, of course, is no. It is by now axiomatic that "implications from statutory text or legislative history are not sufficient to repeal habeas jurisdiction; instead, Congress must articulate specific and unambiguous statutory directives to effect a repeal." In St. Cyr, Liang, and Sandoval, the Supreme Court and this Court carefully examined all of the relevant provisions of the AEDPA and IIRIRA, and we will not do so again here. Suffice it to say, it is now beyond dispute that Congress did not explicitly state its intention to repeal the district court's 28 U.S.C. §2241 jurisdiction over habeas petitions filed by aliens subject to a final order of removal.

Chmakov, 266 F.3d at 214, quoting St. Cyr, 533 U.S. at 299, 121 S.Ct. at 2278-79. The Court then considered and rejected I.N.S.'s attempts to distinguish non-criminal aliens from criminal aliens:

> In asking us to find that in the non-criminal alien setting Congress has stripped the district courts of jurisdiction over habeas petitions, the I.N.S. makes two points, both of which we reject. The first is that an explicit statement of intent to repeal habeas jurisdiction should only be required where such a repeal might cause a violation of the Suspension Clause. But this proposition has not been accepted by either the Supreme Court or this Court. Rather, as the St. Cyr Court put it most recently, if Congress wishes to repeal habeas jurisdiction, it must satisfy two separate and independent requirements. First, that repeal must not violate the Suspension Clause. Second, that repeal must be made in clear and unambiguous language. There is simply no reason to conclude that the absence of one factor would negate the necessity for the other. The I.N.S. argues, second, that although the relevant provisions of AEDPA and IIRIRA do not evince a congressional intent to repeal habeas jurisdiction for criminal deportees, they do evince such an intent for non-criminal aliens. That argument borders on the nonsensical. The Supreme Court has held that those provisions have a particular meaning, and that meaning does not indicate a congressional intent to repeal habeas jurisdiction. It simply cannot be that

10

> the meaning will change depending on the background or pedigree of the petitioner. Were we to so hold, we would render the meaning of any statute as changeable as the currents of the sea, and potentially as cruel and capricious. We, therefore, conclude that Congress has preserved the right to habeas review for both criminal and non-criminal aliens.

Chmakov, 266 F.3d at 214-15.[2]

Based on the foregoing cases, the Petitioner respectfully suggests that the Court possesses jurisdiction to entertain the instant petition, notwithstanding his failure to file an appeal of the BIA's decision with the First Circuit.

    b.    *The additional cases cited in the Court's November 15, 2004 Order*

The Petitioner respectfully suggests that the First Circuit's decision in Ven v. Ashcroft 386 F.3d 357 (1st Cir.2004) does not relate to the Supreme Court's ruling in St. Cyr or the Second and Third Circuit decisions discussed *supra*, as the First Circuit merely held in Ven that all final BIA orders must be appealed to the First Circuit within 30 days in order to obtain review in that forum; the Ven decision does not relate in any manner to the district court's jurisdiction to entertain a petition pursuant to 28 U.S.C. §2241. Ven, 386 F.3d at 359-60.

Likewise, the Petitioner does not believe that Hernandez v. Reno, 238 F.3d 50 (1st Cir.2001), interferes with the Court's ability to exercise jurisdiction in this case. In Hernandez, which dealt with predecessor immigration statutes, the BIA dismissed Hernandez' appeal after his counsel failed to file a brief with the BIA and Hernandez did not appeal the Board's decision to the First Circuit under then existing immigration law. Hernandez, 238 F.3d at 52-53. Inexplicably, no action was taken against Hernandez for

---

[2]. The Third Circuit specifically rejected the district court's ruling, and the Respondent's argument in this case, that it lacked jurisdiction because the Chmakovs were non-criminal aliens and therefore could have filed a petition for review in court of appeals, noting again that the fact that there is no Suspension Clause problem did not end the inquiry—there still must be a clear and unambiguous repeal of habeas jurisdiction by Congress. Chmakov, 266 F.3d at 215.

11

almost four years, at which time he received a so-called "bag and baggage" letter directing him to appear for deportation the following month. Hernandez, 238 F.3d at 53. On the day of his scheduled deportation, Hernandez hired a new attorney, who immediately filed a writ of habeas corpus in the district court, pursuant to §2241, and a motion to reopen his case with the Board, both of which claimed that Hernandez had been denied due process in the deportation proceedings because of prior counsel's ineffectiveness. Hernandez, 238 F.3d at 53.

The district court dismissed Hernandez' petition because it "viewed the relief sought by Hernandez—effectively requiring the Board to reopen his section 212(c) waiver case—as interfering with the Attorney General's decision to 'adjudicate' cases," and therefore ruled it was barred by 8 U.S.C. §1252(g). Hernandez, 238 F.3d at 53. On appeal, the government argued that the habeas was correctly dismissed for lack of jurisdiction for two other reasons: "because former section 106(a) of the INA, 8 U.S.C. §1105a(a), made direct review the exclusive avenue to review deportation orders, and in the alternative, because Hernandez has failed to exhaust his administrative remedies." Hernandez, 238 F.3d at 53-54. While the First Circuit was construing the predecessor statute, which "made court of appeals review the 'sole and exclusive procedure' to review final orders of deportation", the court noted, among other things, that it would not find an implied repeal of habeas corpus, especially where an asserted constitutional default by predecessor counsel forfeited direct review. Hernandez, 238 F.3d at 54, relying upon Goncalves v. Reno, 144 F.3d 110, 119-23 (1st Cir.1998), cert. denied, 526 U.S. 1004, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999).

Finally, in Sayyah v. Farquharson, 382 F.3d 20 (1st Cir.2004), the First Circuit held that an alien must exhaust his administrative remedy of filing an appeal with the BIA as a condition precedent to filing a habeas corpus petition. In so holding, the First Circuit joined six other circuits in ruling that §1252(d)(1)'s exhaustion requirement was a reasonable condition precedent to obtaining habeas review and that St. Cyr was not analogous because §1252(d) did not purport to eliminate judicial review, but, rather, premised judicial review upon the prior exhaustion of administrative remedies. Sayyah, 382 F.3d at 24-25. "In so doing," the First Circuit ruled, "§1252(d) implements a principle almost universally recognized in our jurisprudence." Sayyah, 382 F.3d at 25. Most importantly, Sayyah did not hold that filing an appeal to the court of appeals was a condition precedent to filing a habeas corpus petition (indeed, the issue was not even addressed).

In this case, the Petitioner claims that some third party withdrew his appeal to the BIA without his knowledge or consent, and he seeks to remedy that unlawful act via his §2241 petition. As such, Sayyah is inapposite (assuming the Court concludes that Petitioner did not voluntarily withdraw his appeal). In this regard, this matter is similar to Hernandez, where the petitioner claimed that prior counsel's failure to seriously pursue an appeal to the Board, and his failure entirely to present an appeal to the First Circuit, created a constitutional defect. Hernandez, 238 F.3d at 54. In rejecting the government's argument that Hernandez' habeas petition was precluded by his failure to exhaust his administrative remedies, the First Circuit noted that "it would be very odd to say that counsel's unconstitutional conduct created a waiver, forfeit or failure to exhaust that prevented his client from ever litigating the issue." Hernandez, 238 F.3d at 54. The same

13

is true here. It would be odd to say that Bennour's central claim—that some third party withdrew his appeal without his knowledge or consent—was somehow waived by the very act complained of in his habeas petition—i.e., the unlawful withdrawal of his appeal by that third party. Admittedly, Sayyah would appear to preclude habeas review if Bennour voluntarily or knowingly failed to file an appeal with the BIA, or voluntarily withdrew that appeal, but Bennour claims herein that he did not withdraw that appeal. Hence, Sayyah does not control this case.[3]

>    c.   *The Fifth Amendment entitles Bennour to due process of law in his deportation proceedings and the withdrawal of his appeal to the BIA without his knowledge or consent has deprived him of the fundamentally fair process to which he was entitled.*

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." Reno v. Flores, 507 U.S. 282, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993); see Saakian v. I.N.S., 252 F.3d 21, 24 (1st Cir.2001). In this case, the Petitioner claims that his ability to exercise his procedural right to appeal the immigration judge's decision to the BIA was thwarted by the unauthorized acts of some third party. As the First Circuit explained in Saakian v. I.N.S., 252 F.3d 21 (1st Cir.2001):

> Here the liberty of an individual is at stake … We are dealing here with procedural requirements prescribed for the protection of the alien. Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live

---

[3]. As for the Respondent's reliance on Rivera-Martinez v. Ashcroft, 2004 WL 2474417 (1st Cir.2004), the petitioner in that case, for whatever reason, did not brief or argue that the district court erred in concluding that he could not use §2241 to pursue a claim that he could have, but did not, press on statutory direct review, and therefore the First Circuit had "no warrant to upset the district court's judgment." While the First Circuit commented in passing upon the district court's ruling "under the circumstances of [that] case," there is no serious analysis in the decision, which fails to even mention (must less analyze) the analyses of St. Cyr, Liu or Chmakov. As such, Rivera-Martinez does not control the jurisdictional issues raised by the Respondent in opposition to the instant petition. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990) (documenting "settled appellate rule that issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"); United States v. Slade, 980 F.2d 27, 30 (1st Cir.1992) ("It is a bedrock rule that when a party has not presented an argument to the district court, she may not unveil it in the court of appeals.").

14

> and work in this land of freedom. That deportation is a penalty—at times a most serious one—cannot be doubted. Meticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet the essential standards of fairness.

Saakian, 252 F.3d at 24, quoting Bridges v. Wixon, 326 U.S. 135, 154, 65 S.Ct. 1443, 89 L.E.2d 2103 (1945). Clearly, if the Petitioner was deprived of his right to appeal his case to the BIA by the unauthorized act of some third party intent on unlawfully stripping him of his right to so appeal, the procedure by which Bennour will be deported, absent intervention by this Court, will not meet the essential standards of fairness, and the Petitioner will not have been afforded procedural due process. See Zadvydas v. Davis, 533 U.S. 678, 718-19, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (noting that as "persons within our jurisdiction, the aliens are entitled to the protection of the Due Process Clause", which "includes protection against unlawful or arbitrary personal restraint or detention" and that aliens in that case did not arrive "at their removable status without thorough, substantial procedural safeguards.").

It does appear that an "applicant claiming a denial of due process must generally show prejudice," though it also appears that prejudice can be presumed in certain fact settings. See Bernal-Vallejo v. I.N.S., 195 F.3d 56, 64 (1st Cir.1999); United States v. Loaisiga, 104 F.3d 484, 487-88 (1st Cir.1997). The Petitioner contends that *per se* prejudice should result where an alien is totally deprived of his statutory right to appeal to the BIA because of the unauthorized act of some third party. But see Betouche v. Ashcroft, 357 F.3d 147, 151 n.8 (1st Cir.2004) ("failure [of counsel] to prosecute an immigration appeal--even if negligent-- does not constitute prejudice, *per se*"). In such a scenario, the alien has been wholly prevented from presenting any claimed error to the

15

BIA and the only remedy is to reinstate his appeal before the BIA, such that the statutory procedure prescribed by Congress is followed.

Should the Court decide that presuming prejudice is not appropriate in this case, the Petitioner has attached hereto as Exhibit 1 the appellate brief he filed with the BIA in support of his position that the immigration court proceedings were fundamentally unfair. The Petitioner submits said brief in support of his argument herein that he has been prejudiced by the loss of his right to appeal to the BIA.[4] In the brief, the Petitioner alleges, amongst other things, that the immigration judge took it upon himself to make critical decisions for the Petitioner (¶10), he intimidated the Petitioner and made him feel "helpless and hopeless" (¶10), the Petitioner was brought to court without prior notice and was therefore not prepared to represent himself during some or all of such proceedings (¶2), and that he was not provided with an appropriate interpreter at one or more hearings (¶3).[5] Surely, if the immigration court did not provide the Petitioner with notice of his hearings, did not provide him with an adequate interpreter, and did not allow him to adequately present his case against deportation and/or in favor of asylum, then it is reasonably probable that the BIA could have reversed the immigration court's findings. Unlike Hernandez, the Petitioner claims herein that he did not have a fair opportunity to present his waiver case to the immigration judge. See Hernandez, 238 F.3d at 55-56

---

[4]. The Petitioner has attached hereto as Exhibit 1 a copy of the handwritten brief filed with the BIA and, for the Court's convenience, a computer generated reproduction of said brief. The two documents should be identical and any discrepancy is a typographical error. Apparently, the brief was never considered by the BIA, either because it was filed late or because the withdrawal had already been filed (unbeknownst to the Petitioner).

[5]. The Petitioner has advised counsel that a fellow inmate prepared his brief to the BIA after engaging in broken English conversations with the Petitioner and that the brief has never been completely translated to the Petitioner. As such, counsel will endeavor to have the document translated to the Petitioner prior to the scheduled hearing in this matter such that Petitioner can affirm any and all statements within the document, especially considering that Petitioner is relying upon those statements in support of his contention that he has been prejudiced by the lack of a BIA appeal. See Affidavit of Abdelaziz Bennour In Response to November 15, 2004 Court Order.

(finding Hernandez had a fair opportunity to present his waiver case to the immigration judge, a reasoned decision was reached, and there was no "reasonable probability" that result in immigration court would have been different if counsel had carried through with an appeal to the Board or to the First Circuit).

III.   Conclusion.

Wherefore, for all of the foregoing reasons, the Court possesses jurisdiction to consider Bennour's habeas corpus petition. As such, the Petitioner respectfully requests that the Court convene the evidentiary hearing to determine whether *vel non* the Petitioner voluntarily withdrew his appeal.

                                                               Respectfully Submitted,
                                                               The Petitioner,
                                                               By His Attorney,

                                                               _____
                                                               Robert M. Goldstein
                                                               Mass. Bar No. 630584
                                                               114 State Street
                                                               Boston, MA  02109
                                                               (617) 742-9015

Dated: December 7, 2004

### CERTIFICATE OF SERVICE

I, Robert M. Goldstein, hereby certify that on this 7th day of December, 2004, I have served one copy of the foregoing Notice of Appearance, by electronic filing, upon Frank Crowley, Special Assistant U.S. Attorney, Department of Homeland Security.

                                                               _____
                                                               Robert M. Goldstein