```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS

ABDELAZIZ BENNOUR,                  )
                                    )
            Petitioner              )
                                    )     Civil Action No.
      v.                            )     04cv12149-MLW
                                    )
BRUCE CHADBOURNE, FIELD OFFICE      )
DIRECTOR, BUREAU OF IMMIGRATION     )
AND CUSTOMS ENFORCEMENT,            )
UNITED STATES DEPARTMENT OF         )
HOMELAND SECURITY                   )
                                    )
            Respondent[1]           )
```

### FOURTH SUPPLEMENTAL MEMORANDUM OF LAW
### IN SUPPORT OF MOTION TO DISMISS

As directed by the Court in its November 15, 2004, order, respondent responds to Petitioner's Memorandum In Response to November 15, 2004 Court Order ("Petitioner's Memorandum").

**ARGUMENT**

I.  PETITIONER HAS PROCEDURALLY DEFAULTED ON HIS CLAIMS FOR REVIEW OF HIS REMOVAL ORDER.

Petitioner's arguments rely on the law of Second and Third circuits, and fail to distinguish his case from the applications of controlling First Circuit law, <u>viz.</u>, <u>Sayyah v. Farquharson</u>, 382 F.3d 20, 26 (1st Cir. 2004) and <u>Rivera-Martinez v. Ashcroft</u>, --- F.3d --- (1st Cir. 2004) (2004 WL 2474417).

---

[1] The responsive official of the Department of Homeland Security responsible for enforcement of petitioner's removal order in the instant action is Bruce Chadbourne, Field Office Director for Detention and Removal, Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("ICE") in Boston, Massachusetts.

Petitioner's first position is that the cases of <u>INS v. St. Cyr</u>, 533 U.S. 289 (2001); <u>Liu v. INS</u>, 293 F.3d 36 (2nd Cir. 2002); and <u>Chmakov v. Blackman</u>, 266 F.3d 210 (3rd Cir. 2001) "establish that an alien (criminal or non-criminal) is not required to file an appeal with the court of appeals as a condition precedent to filing a writ of habeas corpus pursuant to 28 U.S.C. § 2241."  Petitioner's Memorandum, p.2.

Petitioner's arguments are plainly defeated by the controlling First Circuit precedents of <u>Sayyah v. Farquharson</u>, 382 F.3d 20, 26 (1st Cir. 2004) and <u>Rivera-Martinez v. Ashcroft</u>, --- F.3d --- (1st Cir. 2004) (2004 WL 2474417).  It is axiomatic that contrary law from other circuits cannot displace governing First Circuit precedent.  Because petitioner could have but did not file a petition for judicial review of either the BIA's May 29, 2002, decision or its July 11, 2002, motion denial, the failure is a procedural default that eliminates 28 U.S.C. § 2241 as a vehicle "to pursue a claim that he could have, but did not, press on statutory direct review."  <u>Rivera-Martinez v. Ashcroft</u>, 2004 WL 2474417 at *2. Petitioner's arguments that his case would fare better under <u>Liu v. INS</u>, 293 F.3d 36 (2nd Cir. 2002); and <u>Chmakov v. Blackman</u>, 266 F.3d 210 (3rd Cir. 2001), the law of the Second and Third Circuits, are plainly unavailing.

Moreover, neither <u>Liu</u> nor <u>Chmakov</u> is even persuasive authority against the rule of law announced in <u>Rivera-Martinez</u>. Both <u>Liu</u> and <u>Chmakov</u> are based upon a reading of the Supreme Court's <u>St. Cyr</u> case that has not found traction in the First Circuit.  In particular, the First Circuit has read the habeas jurisdiction conclusions of <u>INS v. St. Cyr</u>, 533 U.S. 289 (2001) as based upon "the circumstance of a statute purporting to exclude any and all right of judicial review". <u>Sayyah v. Farquharson</u>, 382 F.3d 20, 24 (1st Cir. 2004).  The First Circuit in <u>Sayyah</u>, however, determined that "<u>St. Cyr</u> is not analogous" to a case involving a statutory exhaustion requirement (8 U.S.C. § 1252(d)) that "does not purport to eliminate judicial review" but rather "premises judicial review upon the prior exhaustion of administrative remedies." <u>Sayyah v. Farquharson</u>, 382 F.3d at 24-25.  The First Circuit observed that <u>St. Cyr.</u> itself allowed that if it were clear that the question of law could be answered in another judicial forum, it might be permissible to accept the government's arguments that habeas corpus review was eliminated by 8 U.S.C. § 1252(a)(2)(C). <u>Id.</u> at 25.

The <u>Sayyah</u> court considered the distinction between complete *elimination* of judicial review and less radical gate-keeping constructions to be "important", citing with approval the explanation of the Eleventh Circuit that "[c]ompelling a petitioner to seek review of an immigration order in the BIA

3

before he can seek to have it set aside in a habeas proceeding is different from barring all habeas review of the order regardless of exhaustion.  The difference is that between a reasonable condition precedent and an unconditional preclusion." Sayyah v. Farquharson, 382 F.3d at 25, quoting Sundar v. INS, 328 F.3d 1320, 1324-26 (11th Cir.), cert. denied --- U.S.---, 124 S.Ct 531, 157 L.Ed.2d 412 (2003).

The point to be drawn from Sayyah is that the First Circuit does not find St. Cyr "analogous" in circumstances which do not amount to a complete *elimination* of judicial review.  Sayyah, 382 F.3d at 24-25.  Sayyah itself therefore had no difficulty in crediting the statutory bar to court review, including habeas corpus review, where such review was available had administrative remedies been exhausted.  In Sayyah there was no question for the First Circuit of the "elimination" of habeas corpus review, but simply of an insistence on satisfaction of the condition precedent, viz. exhaustion of administrative remedies.

The reading of St. Cyr by the First Circuit in Sayyah is consonant with its conclusions in Rivera-Martinez, supra. Rivera-Martinez recognized that in the case where statutorily prescribed direct review at First Circuit is available to an alien, he must petition for such review.  If the claim is one he "could have, but did not, press on statutory direct review", the petitioner has procedurally defaulted and cannot in habeas

proceedings "resurrect a claim that could have and should have been presented on direct review." Rivera-Martinez, supra, at *2. An "elimination" of judicial review is no more at work Rivera-Martinez than it was in Sayyah.

Although petitioner elaborates his arguments upon the straw proposition that St. Cyr, Liu, and Chmakov have "rejected the argument advanced by the Respondent in this case", Petitioner's Memorandum at 6, the procedural default bar as recognized in Rivera-Martinez, supra, and now relied upon by respondent in the instant action, became a feature of First Circuit precedent only on November 4, 2004, years after the decisions relied upon by petitioner.

Petitioner's footnoted dismissal of the First Circuit's Rivera-Martinez, supra, as containing "no serious analysis" and "not control[ling] the jurisdictional issues raised by the Respondent", Petitioner's Memorandum, p. 14 n.3, is just whistling past the grave yard. Rivera-Martinez makes reference to its own earlier published procedural default applications as previously recognized principles, and to similar jurisprudence from the Ninth Circuit, Rivera-Martinez at *3,[2] and distinguishes its own Hernandez v. Reno, 238 F.3d 50, 54-55 (1st Cir. 2001) upon lack of any prudential concerns. Id. at *2.

5

Though the First Circuit explicitly recognized that the district court's procedural default decision below in Rivera-Martinez did not rely on the kind of statutory jurisdictional analysis now advanced by the instant petitioner, Rivera-Martinez, at *2, it left no doubt that "[i]n any event, we do not see any error in the court's ruling", and that "as the district court recognized, this is a straightforward case of a petitioner attempting to use habeas to resurrect a claim that could have and should have been presented on direct review." Id. The First Circuit concluded in Rivera-Martinez that, "we see no reason to doubt the correctness of the district court's decision to apply those principles to reject Rivera's petition." Rivera-Martinez, supra, at *2, 3.

In the end, petitioner's positions are directly contradicted by the controlling First Circuit precedents of Sayyah v. Farquharson, 382 F.3d 20, 26 (1st Cir. 2004) and Rivera-Martinez v. Ashcroft, --- F.3d --- (1st Cir. 2004) (2004 WL 2474417). His arguments that Second and Third Circuit law support his case are unavailing as a matter of geography under the clear law of the First Circuit to the contrary.[3]

---

[2] Namely, Foroglou v. Reno, 241 F.3d 111, 115 (1st Cir. 2001); Mattis v. Reno, 212 F.3d 31, 41 (1st Cir. 2000), abrogated on other grounds, 533 U.S. 289 (2001); and Acevedo-Carranza v. Ashcroft, 371 F.3d 539, 541-42 (9th Cir. 2004).

[3] Respondent agrees that Ven v. Ashcroft, 386 F.3d 357 (1st Cir. 2004) and Awe v. Ashcroft, raised initially by petitioner at hearing, do not support petitioner's claims.

Accordingly, the Court should dismiss this action as procedurally defaulted.

II. NO "PRUDENTIAL GROUND" EXCUSES PETITIONER'S PROCEDURAL DEFAULT.

    A. <u>Petitioner Has Failed To Establish Any "Prudential Ground" Sufficient To Excuse His Procedural Default</u>.

In arriving at its conclusion in <u>Rivera-Martinez</u> that the district court was correct to reject the procedurally defaulted habeas petition, the First Circuit raised as a germane consideration whether there was "some reason to believe that Rivera should be relieved of exhaustion on prudential grounds", <u>id</u>. at *2, <u>citing</u> <u>Hernandez v. Reno</u>, 238 F.3d 50, 54-55 (1st Cir. 2001). The Court at the last hearing inquired of petitioner what prudential ground, if any, was present in his case to except his procedural default from the reach of <u>Rivera-Martinez</u>. However, to date, the instant petitioner has been unable to identify any sufficient "prudential grounds" upon which to argue for exemption from his procedural default.

The <u>Rivera-Martinez</u> reference to <u>Hernandez</u> in connection with the "prudential grounds" question is instructive. The <u>Hernandez</u> court's finding of habeas corpus jurisdiction in the district court below was based upon two reasons. First, the <u>Hernandez</u> case itself was governed by the now-repealed judicial review provisions of prior Immigration and Nationality Act ("INA") section 106(a), namely prior 8 U.S.C. § 1105a(a)(10), which had "explicitly endorsed habeas corpus as a remedy".

7

Hernandez v. Reno, 238 F.3d at 54.  As a secondary basis, the First Circuit reasoned that "where an asserted constitutional default by counsel forfeits direct review", that the logic of Goncalves v. Reno, et al., 144 F.3d 110 (1st Cir. 1998), cert. denied 526 U.S. 1004, finding no implied repeal of habeas corpus, applies. Hernandez v. Reno, 238 F.3d at 54.

The government in Hernandez argued that the petitioner had failed to exhaust his administrative remedies both by failing to complete briefing (by allegedly ineffective counsel) in his BIA appeal, and because petitioner still had an untimely motion to reopen pending determination at the BIA. Hernandez v. Reno, 238 F.3d at 54.  The Hernandez court rejected the idea that unconstitutional conduct by counsel could itself be the very basis for preventing petitioner's *litigation* of that unconstitutional conduct. Id.[4]

Petitioner finds the instant litigation "similar to Hernandez," Petitioner's Memorandum at 13, because petitioner says his appeal was withdrawn without his consent by some unknown third party.  The parallel sought to be drawn, presumably, is that in both Hernandez and (according to the assertions of petitioner) in the instant case, some allegedly unconstitutional act worked a denial of the right to a fair and

complete administrative appeal at the BIA. However, petitioner's train of argument goes off the track when he invokes the language in Hernandez as applicable to his own case because, "it would be very odd to say that counsel's unconstitutional conduct created a waiver, forfeit or failure to exhaust that prevented his client <u>from ever litigating the issue</u>." Petitioner's Memorandum at 13, citing Hernandez, supra, 238 F.3d at 54 (emphasis added).

Petitioner's reliance on Hernandez in this connection does not survive scrutiny, however. In Hernandez the First Circuit assumed that the alleged unconstitutional negligence of counsel not only derailed the petitioner's BIA appeal, but also denied petitioner an opportunity to file for statutory direct review at the First Circuit Court of Appeals. Id. at 56. Hernandez therefore, because of the allegedly unconstitutional negligence of counsel, was deprived of his opportunity to pursue the available and statutorily prescribed *judicial review* at the First Circuit. The First Circuit later in Sayyah, supra, explained the Hernandez exception to the exhaustion bar as turning on "the particular facts of that case", and that, inter alia, Hernandez's "failure to timely exhaust may have been

---

[4] With respect to the untimely motion to reopen, Hernandez determined that an untimely motion to reopen was not a remedy "as of right" that required exhaustion under the INA exhaustion statute. Id. at 54-55. Turning to the merits, of Hernandez's claim, the First Circuit then ultimately found no due process violation.

9

caused by the very incompetency he complained of." <u>Sayyah</u>, 382 F.3d at 26.

The instant petitioner, on the other hand, had personal knowledge of the BIA's May 29, 2002, decision indicating the BIA's understanding that petitioner had withdrawn his appeal from the Immigration Judge's removal order.  In fact, petitioner filed a motion to reopen or reconsider with the BIA in which he says he had advanced "all petitioner['s] effort to pro[ve] that he did not withdraw his appeal", Petitioner's Reply, pp. 1-2.  When the BIA rejected petitioner's motion to reopen or reconsider by decision dated July 11, 2002, petitioner, if he still thought that the BIA's determination was in error, "could have and should have" made his challenges to this BIA determination by filing the statutorily prescribed direct judicial review to the First Circuit Court of Appeals.  This is a fundamental distinction from <u>Hernandez</u>, where the assumed negligence of counsel *denied* Hernandez that opportunity.  Therefore, fact that the instant petitioner had judicial review open to him but failed to pursue it is a procedural default that bars the Court's assumption of jurisdiction in the instant action, <u>Rivera-Martinez</u>, <u>supra</u>, at *2, and also distinguishes petitioner's case from the prudential exception recognized in <u>Hernandez</u>.

In sum, the essential difference therefore is that in <u>Hernandez</u> the allegedly unconstitutional act denying due

process prevented petitioner "from ever litigating the issue". Hernandez at 54. The instant case, in contrast, does not implicate that prudential concern and rather, like Rivera-Martinez, "is a straightforward case of a petitioner attempting to use habeas to resurrect a claim that could have and should have been presented on direct review." Rivera-Martinez, supra, at *2.

    B.    <u>Even If Petitioner Had Not Procedurally Defaulted, He Has Failed To Demonstrate Prejudice From The Asserted Administrative Errors</u>.

Petitioner's arguments going to whether he can establish the prejudice component of his due process complaint, Petitioner's Memorandum, pp. 15-17, obviously beg the threshold question that petitioner's claims haven't been procedurally defaulted, but respondent's position is that petitioner has failed to establish any sufficient basis to excuse his procedural default until Rivera-Martinez. See ARGUMENT, Parts I. and II. A., supra. However, even if there were no procedural default and petitioner's claims were cognizable in this Court, petitioner has failed to make out a claim of prejudice.

Demonstration of prejudice is an essential component to establishing an administrative due process claim. Hossain v. Ashcroft, 381 F.3d 29, 32 (1st Cir 2004)("We agree that a due process claim cannot succeed if there is no prejudice; without prejudice, any error that occurred would be harmless."); Bernal-Vallejo v. INS, 195 F.3d 56, 64 (1st Cir. 1999)("[T]he

11

applicant claiming a denial of due process must generally show prejudice."). And it is the law in this circuit as petitioner acknowledges that error resulting in denial of a BIA appeal is not prejudice per se. Petitioner's Memorandum, at 15, quoting Betouche v. Ashcroft, 357 F.3d 147, 151 n.8 (1st Cir. 2004) ("Counsel's failure to prosecute an immigration appeal -- even if negligent -- does not constitute prejudice per se.").

Petitioner seeks to distinguish the First Circuit's Hernandez finding of no prejudice by asserting that "[u]nlike Hernandez, the Petitioner herein claims that he did not have a fair opportunity to present his waiver case to the immigration judge." Petitioner's Memorandum at 16. But Hernandez also claimed that he was denied due process in administrative proceedings and, as the First Circuit has observed, "[t]he BIA has the authority to deal with [a petitioner's] objection to the events in [the Immigration Judge's] courtroom and provide relief". Sayyah v. Farquharson, 328 F.3d at 27, citing Ravindran v. INS, 976 F.2d 754, 763 (1st Cir. 1992)(listing "judicial conduct" among "irregularities" that BIA could have corrected if brought to its attention."). Moreover, "'Due process' is not a talismanic term which guarantees review in this court of procedural errors correctable by the administrative tribunal." Ravindran v. INS, 976 F.2d at 762.

Petitioner submits as an Exhibit his untimely BIA brief in support of his argument that he was prejudiced by the allegedly

12

erroneous BIA decisions. Petitioner's Memorandum, Exhibit 1. The argument is that had petitioner's BIA appeal gone to full term, the BIA would have reversed the removal order of the Immigration Judge. However, petitioner's BIA brief itself fails to demonstrate any prejudice from the alleged due process inadequacies. Though the brief's narrative weaves in and out of petitioner's State criminal and Federal administrative history and chronicles the abuse petitioner sees himself having suffered from his ex-wife and "from the courts and jail and the conspiracy from different parts", id., ¶16, petitioner still does not tell the BIA in his brief how, if all the assigned administrative mistakes before the Immigration Judge hadn't occurred, the result would have been different.

In particular, petitioner does not contest his substantive deportability, that is, that he was admitted as a nonimmigrant and as circumstances developed remained in the United States longer than authorized. Nor does petitioner dispute the Immigration Judge's determination that he is statutorily barred from applying for asylum under 8 U.S.C. § 1158(a)(2)(B) (relating to requirement that an asylum application be filed within one year of alien's arrival in the United States), see Attachment A, Oral Decision of the Immigration Judge, dated

13

December 28, 2001,[5] p. 4 .  And petitioner fails to explain why the Immigration Judge's alternative determination denying asylum and the other relief applications on the merits was incorrect.  As to petitioner's other assignments of error made on administrative appeal to the BIA, the First Circuit has noted in <u>Hernandez</u> that errors made by an Immigration Judge may "fall far short of a denial of due process." <u>Id.</u>, 238 F.3d 50 n.2.

It is worthwhile noting also that petitioner's late-filed brief was rejected by the BIA as untimely[6] on May 21, 2002, and so it is hard to fathom petitioner's reliance upon it as a vehicle to demonstrate prejudice flowing from the BIA's May 29, 2002, determination that the appeal had been withdrawn.

Moreover, there is another element of the First Circuit's <u>Hernandez</u> analysis present in this connection.  Petitioner now, more than 2 ½ years after his untimely submission of his BIA appellate brief, seeks extraordinary habeas corpus relief despite a procedural default by relying on his BIA brief "that

---

[5] Respondent brings to the Court's attention that this same document, appearing as Attachment B to respondent's Return and Memorandum of Law in Support of Motion to Dismiss, Stay Opposition, and Notice of Intent to Execute Removal Order (Docket entry #5), is missing pages 15-18. Respondent regrets any inconvenience caused by this.

[6] <u>See</u> Petitioner's Memorandum, p. 16 n.4.  <u>See</u> <u>also</u> letter from petitioner to BIA dated July 17, 2002, Exhibit #IV to petitioner's Reply to the Government Return/Response/Motion to Dismiss Due to Failure to Exhaust Administrative Remedy (Docket entry #9), conceding that BIA received petitioner's appeal brief on May 21, 2002, four days after the May 17, 2002

14

has never been completely translated to the Petitioner", Petitioner's memorandum, p. 16 n.5, and which petitioner "believe[s] [to be] accurate . . . though it has never been translated for me into my native language." Affidavit of Abdelaziz Bennour, ¶5, Exhibit 1 to Petitioner's Memorandum. Cf. Hernandez, 238 F.3d at 57 (court expressing that it was "hard to stomach" the idea that Hernandez could "sit on his hands" for years and then say that he was unconstitutionally denied an opportunity to pursue an appeal from the denial of waiver."). Though petitioner has been slow to ascertain the actual content of what he filed on appeal to the BIA in support of his due process claim, he has been quick to demand that this Court conduct evidentiary hearings on due process claims that he has procedurally defaulted upon.

In the end, even if petitioner's claims of due process violations had not been procedurally defaulted by his failure to pursue prescribed direct review, he fails to demonstrate a reasonable probability that had his appeal continued to determination his appeal brief would have resulted in a reversal of the decision of the Immigration Judge. See Attachment A, Oral Decision of the Immigration Judge; see also Attachment B, INS Appellate Brief filed in opposition to petitioner's appeal.

---

extension-of-filing deadline previously granted to petitioner by the BIA.

Accordingly, the Court should dismiss this case as procedurally defaulted.

## CONCLUSION

For all the reasons set out above and in respondent's prior filing, the Court should dismiss this action as procedurally defaulted.

    Respectfully submitted,

    MICHAEL J. SULLIVAN
    United States Attorney

By:  s/Frank Crowley
    FRANK CROWLEY
    Special Assistant U.S. Attorney
    Department of Homeland Security
    P.O. Box 8728
    J.F.K. Station
    Boston, MA 02114
    (617) 565-2415

## CERTIFICATE OF SERVICE

I hereby certify that I caused true copy of the above document to be served upon counsel for petitioner by mail on December 15, 2004.

    s/Frank Crowley
    FRANK CROWLEY
    Special Assistant U.S. Attorney
    Department of Homeland Security
    P.O. Box 8728
    J.F.K. Station
    Boston, MA 02114