UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
ABDELAZIZ BENNOUR,             )
        Petitioner,            )
                               )
            v.                 )    Civ. No. 04-12149-MLW
                               )
BRUCE CHADBOURNE, FIELD        )
OFFICE DIRECTOR, BUREAU OF     )
IMMIGRATION AND CUSTOMS        )
ENFORCEMENT, UNITED STATES     )
DEPARTMENT OF HOMELAND         )
SECURITY,                      )
        Respondent.            )
```

MEMORANDUM AND ORDER

WOLF, D.J.                                      January 3, 2005

    This memorandum is based on the transcript of the decision rendered orally on December 22, 2004, in which the court allowed respondent Bruce Chadbourne, Field Office Director, Bureau of Immigration and Customs Enforcement, United States Department of Homeland Security's (the "government") Motion to Dismiss petitioner Abdelaziz Bennour's petition for a writ of habeas corpus. This memorandum adds some citations, clarifies some language, and expands some discussion.

* * *

I. SUMMARY

    On October 12, 2004, three days before he was scheduled to be deported, Bennour filed a petition for a writ of habeas corpus, seeking essentially to vacate the order that he be deported. In response, on October 13, 2004, the government filed a motion to

1

dismiss the petition on the ground that Bennour had not exhausted his administrative remedies because, on May 10, 2002, he allegedly withdrew his appeal to the Board of Immigration Appeals ("BIA"). Opposing the motion to dismiss, Bennour submitted a reply brief in which he claimed that he did not withdraw his appeal to the BIA.

The court ordered that counsel be appointed for Bennour, and an initial hearing was conducted on October 26, 2004. At that hearing, the government argued that, even accepting Bennour's contention that he did not withdraw his appeal to the BIA, his habeas petition is still procedurally foreclosed because he failed to appeal the BIA's July 11, 2002 decision declining to reopen his appeal to the First Circuit within 30 days, as he was required to do by 8 U.S.C. §§1252(b)(1), (2). As this argument had not been briefed, the court ordered the parties to submit supplemental memoranda addressing it. A second hearing was held on November 15, 2004, and a third on December 22, 2004.

As the court has considered an affidavit filed by Bennour, and certain facts not evident from the face of his petition, it is most appropriate to evaluate the government's motion to dismiss pursuant to the standard for summary judgment. In applying the summary judgment standard, the court looks to the undisputed facts and determines whether the government is entitled to judgment as a matter of law. Woods v. Friction Materials, Inc., 30 F.3d 255, 259 (1st Cir. 1994). In the instant case, the court finds that there

are no material facts in dispute, and that the government is entitled to judgment as a matter of law, essentially because this case is not distinguishable from <u>Rivera-Martinez v. Ashcroft</u>, 389 F.3d 207 (1st Cir. 2004).

As explained below, the court assumes that it has jurisdiction over Bennour's petition. However, as in <u>Rivera-Martinez</u>, 389 F.3d at 209, his claim is procedurally defaulted because Bennour did not appeal the BIA's denial of his motion to reopen the proceedings before it to the First Circuit. In addition, there are no prudential considerations sufficiently compelling to make an exception to the rule generally requiring dismissal if there has been a procedural default.

II. BACKGROUND

Unless otherwise indicated, the following facts are not in dispute.

Bennour is a citizen of Algeria. He came to the United States on July 13, 1997 as a non-immigrant fiancé for the purpose of marrying a United States citizen. <u>See</u> Government's Motion to Dismiss, 2. He married a United States citizen, Deborah A. Sunderman, on October 7, 1997. Ms. Sunderman, however, withdrew her support for Bennour's lawful immigration, and filed for an annulment. <u>Id.</u> Bennour's application for lawful permanent residence was denied on April 20, 1998, and the annulment of the marriage was entered on July 17, 1998. <u>Id.</u> at 3.

3

According to the government, Bennour's criminal record includes eight convictions for violation of the Massachusetts Abuse Prevention Act, M.G.L. c. 209A §7, relating to restraining orders taken out by his former wife. Id. at 6-8, n.5

By administrative Notice to Appear dated June 12, 1998, the former Immigration and Naturalization Service ("INS") brought removal proceedings against Bennour, charging that because of his unsuccessful application for permanent residence, he was removable as a nonimmigrant alien who had remained in the United States longer than authorized. Id. at 3; see also 8 U.S.C. §1227(a)(1)(B).

On December 28, 2001, Immigration Judge Thomas Ragno found Bennour removable as charged, and denied his applications for relief under asylum, withholding of deportation, voluntary departure, and his claim to protection under the Convention Against Torture Act. See Government's Motion to Dismiss, 2-3. Bennour filed an administrative appeal from the Immigration Judge's removal order to the BIA. Id. However, according to the government, on May 10, 2002, Bennour withdrew his appeal. Id.

The BIA acknowledged Bennour's apparent withdrawal of his appeal by decision dated May 29, 2002. Subsequently, Bennour tried to file a motion with the BIA to reopen the case, in which he asserted that he never withdrew his appeal to the BIA and contended that a third party, acting without his authorization, transposed his signature onto a letter withdrawing the appeal. In his written

4

submissions to this court, Bennour attached as an exhibit a letter received by the BIA on July 22, 2002, in which he states that he never withdrew the appeal. As an attachment to that letter, he appended what he stated was an earlier letter to the same effect, although there is no date on that letter, other than the July 22, 2002 stamp noting receipt by the BIA. See Government's Motion to Dismiss, Attachment E. The dispute over whether Bennour withdrew his appeal to the BIA is not, however, material to the present analysis.

In a July 11, 2002 decision denying Bennour's request to reopen his appeal, the BIA informed him that any motion to reopen should be directed only to the immigration judge, since he had withdrawn his appeal. Bennour did not appeal the BIA's denial of his motion to reopen to the First Circuit, as he was entitled to do by 8 U.S.C. §1252(b)(2). In a recent affidavit, he states that he:

> did not file an appeal with the Court of Appeals because I never knew that I was supposed to file an appeal. I don't remember the BIA ever telling me that I had the right to file an appeal to the Court of Appeals or that I was required to do so. I was doing the best I could to contest my deportation, given my lack of an attorney and my inability to speak the English language well and my reliance on other held inmates to help me defend myself.

Bennour Aff., ¶4. Bennour does not offer any further explanation for why he did not appeal the BIA's decision to the First Circuit.

III. ANALYSIS

The government does not argue that this court lacks

jurisdiction to decide plaintiff's habeas corpus case. The court assumes that such jurisdiction exists, although it recognizes that the availability of habeas corpus review to aliens removed for reasons other than having committed a crime remains an open issue in the First Circuit. See Seale v. INS, 323 F.3d 150, 153 (1st Cir. 2003).

The Second and Third Circuits have held that habeas review is available in cases involving non-criminal aliens. See Chmakov v. Blackman, 266 F.3d 210, 215 (3rd. Cir. 2001); Liu v. I.N.S., 293 F.3d 36, 39 (2nd Cir. 2002). Similarly, in Kaweesa v. Ashcroft, No. CIV.A.04-10513-WGY, 2004 WL 2729747, *14 (D. Mass., Nov. 18, 2004), Chief Judge William Young recently reached the same conclusion.

As the Ninth Circuit noted in Laing v. Ashcroft, 370 F.3d 994, 997 n.4 (9th Cir. 2004), however, finding that habeas jurisdiction exists for non-criminal aliens does "not decide the question of whether the exhaustion doctrine requires aliens to exhaust available remedies before seeking habeas review." Accordingly, the Ninth Circuit held that its "requirement that an alien exhaust his or her judicial remedies before filing a habeas petition is consistent with both Supreme Court and inter-circuit precedent." Id. This court agrees.

The BIA's July 11, 2002 decision denying Bennour's motion to reopen was a final order of removal, reviewable in the First Circuit pursuant to 8 U.S.C. §1252(b)(2), as numerous circuits have

6

held. See Assaad v. Ashcroft, 378 F.3d 471, 474 (5th Cir. 2004); Patel v. United States Attorney General, 334 F.3d 1259, 1261 (11th Cir. 2003); Maynard v. INS, 129 F.3d 438, 439 (8th Cir. 1997); Chow v. INS, 113 F.3d 659, 664 (7th Cir. 1997); Infanzon v. Ashcroft, 386 F.3d 1359, 1361 (10th Cir. 2004). An appeal of the BIA's denial of a motion to reopen is required to be filed within 30 days, pursuant to 8 U.S.C. §1252(b)(1).

Bennour did not appeal the BIA's July 11, 2002 decision denying his motion to reopen within 30 days and, indeed, he has never filed such an appeal. This constitutes a procedural default which, absent good reasons, bars consideration of the merits of his petition for a writ of habeas corpus. See Rivera-Martinez, 389 F.3d at 210. In Rivera-Martinez, the First Circuit affirmed the dismissal of a habeas petition because the petitioner did not appeal a final order of removal from the BIA to the First Circuit within 30 days, as provided by 8 U.S.C. §§1252(b)(1), (2). The First Circuit quoted Judge Douglas Woodlock's statement that "because there exists a specific statutory review process . . . there is no basis to invoke habeas corpus jurisdiction to provide a duplicative review process or vary that which Congress has provided." Id. at 208-9. Similarly, Judge Young, in Kaweesa, 2004 WL 2729747 at *18-19, and Judge Michael Ponsor in Arloo v. Ashcroft, 238 F.Supp.2d 381, 382 (D. Mass. 2003), have held that the failure to appeal a final order of removal to the First Circuit

constitutes a procedural default.

In Rivera-Martinez, the First Circuit noted that it was not addressing a case in which the petitioner argued, or in which there was reason to believe, that the petitioner should be relieved of the exhaustion obligation on prudential grounds. See Rivera-Martinez, 389 F.3d at 210 (citing Hernandez v. Reno, 238 F.3d 50, 55 (1st Cir. 2001)). As this statement recognizes, the requirement of exhaustion is not absolute. Rather, as the First Circuit wrote in Hernandez, 238 F.3d at 55, "unless rigidly prescribed by statute, exhaustion may be excused where there is reason to do so." See also Sousa v. I.N.S., 226 F.3d 28, 31-32 (1st Cir. 2000).

In Hernandez, an alien was permitted to maintain a due process/ineffective assistance of counsel claim notwithstanding his failure to exhaust administrative remedies. Subsequently, in explaining why such a claim may warrant excusing exhaustion requirements, the First Circuit noted that where an alien's counsel representation was ineffective, the alien's "failure to timely exhaust may have been caused by the very incompetency he complained of." Sayyah v. Farquharson, 382 F.3d 20, 26 (1st Cir. 2004).

In the instant case, as explanation for his failure to appeal the BIA's July 11, 2002 decision to the First Circuit within 30 days, Bennour only asserts that he was an immigrant who did not speak English and who was ignorant of the law. These are not atypical difficulties in immigration cases, and do not constitute

8

a reason to excuse the exhaustion requirement. If an exception to the exhaustion requirement were justified on this basis, it would be available to many, if not most, immigrants facing removal. Accordingly, such an exception would eviscerate the statutory scheme created by 8 U.S.C. §1252. See Laing, 370 F.3d at 1000 (noting that "waiver of the exhaustion requirement would permit aliens to bypass the deadlines and pathways of judicial review prescribed by [8 U.S.C. §1252] by converting time-barred petitions to the courts of appeals into habeas petitions.").

8 U.S.C. §1252 provides an opportunity for judicial review of BIA decisions but requires, for good reasons illustrated by this case, that those appeals be pursued promptly. Id. Bennour's motion to reopen the BIA proceedings was denied on July 11, 2002. He did not file his habeas petition or otherwise seek any judicial review of his case until October 12, 2004, three days before his scheduled deportation. The mere filing of the instant petition, and the proceedings that have ensued, required the government to postpone his deportation, which the court has been informed will take a long time to arrange again.

Recognizing an exception to the exhaustion requirement in the circumstances of this case would permit many immigrants ordered removed to not seek direct judicial review in the courts of appeals and, instead, wait until their deportation was arranged and imminent, and then at least delay that deportation by filing habeas

petitions based on the contention that they did not speak English or understand the applicable law. Excusing the exhaustion requirement on the basis of such contentions would substantially undercut the statutory scheme that the President and Congress have devised to balance an alien's interest in judicial review of deportation decisions and the need for finality and predictability concerning those decisions.

Although not material to the decision to dismiss Bennour's petition, in the interest of completeness the court notes that to obtain relief on the merits, Bennour would have to show that he has been prejudiced by the alleged denial of his right to due process by the Immigration Judge and by the BIA's decision not to reopen his case and consider the merits. See Hossain v. Ashcroft, 381 F.3d 29, 32 (1st Cir. 2004). In his written submissions, Bennour argues that per se prejudice should be found when, as he alleges here, an alien is deprived of his statutory right to appeal an Immigration Judge's decision because of the unauthorized act of some third party. More specifically, Bennour alleges that someone else falsely wrote to the BIA stating that he was withdrawing his appeal. In Betouche v. Ashcroft, 357 F.3d 147, 151 n.8 (1st Cir. 2004), however, the First Circuit held that counsel's failure to prosecute an immigration appeal, even if negligent, does not constitute per se prejudice.  This conclusion is equally applicable here.  See also Hernandez, 238 F.3d at 56.

In his effort to demonstrate prejudice, Bennour has submitted his brief to the BIA in which he asserts that the proceedings before the Immigration Judge were fundamentally unfair. Among other things, he argues that the Immigration Judge did not give him sufficient notice of the hearing or provide him with an adequate interpreter.

As the government argues, however, certain facts are undisputed. Bennour was admitted to the United States as a non-immigrant. He has remained in the United States longer than authorized. As his counsel acknowledged at the December 22, 2004 hearing, his only possible meritorious basis for remaining in the United States would be a persuasive claim for asylum. The Immigration Judge found that claim was not timely filed. See Government's Motion to Dismiss, attachment B, 4. 8 U.S.C. §1158(a)(2)(B) requires that an application for asylum be filed within a year of an alien's arrival in the United States. The Immigration Judge held that Bennour's application for asylum was untimely because it was not filed within one year of December 9, 1998. The decision does not cite 8 U.S.C. §1158(a)(2)(B), or any other statute, for the requirement that an application for asylum be filed within one year, and does not make clear why the one year requirement began to run on December 9, 1998. This uncertainty is immaterial, however, as Bennour filed his application for asylum on May 16, 2000, and thus failed to file within a year of either

11

December 9, 1998 or the date of his arrival in the United States, July 13, 1997.

There does not appear to be any justifiable excuse for Bennour's failure to timely file his petition for asylum. To the extent that this is true, there is not a reasonable probability that Bennour would be able to establish that any imperfections in the proceedings before the Immigration Judge prejudiced him. As such, his petition for a writ of habeas corpus would fail even if Bennour's procedural default did not bar consideration of its merits.

IV.  <u>ORDER</u>

In view of the foregoing, it is hereby ORDERED that the government's Motion to Dismiss (Docket No. 4) is ALLOWED.

_____
UNITED STATES DISTRICT COURT