## Judge 'Tarzan' benched

By NOELLE STRAUB

Boston Immigration Judge Thomas Ragno was placed on administrative leave yesterday after complaints he joked about "Tarzan" to a Ugandan woman named Jane seeking asylum.

[...] Ragno will remain on paid leave pending the results of a review of the accusations, which were first reported in the Herald yesterday. Obviously the [...]

Turn to Page 20

# Immigration judge benched for 'Tarzan' joke to asylum seeker

**From Page 1**

matter just arose today and these allegations were brought to our attention," said Greg Gagne, spokesman for the Justice Department's Executive Office for Immigration Review.

Gagne said the matter was referred to the department's Office of Professional Responsibility to carry out the review.

The procedure and length of the process remains unclear.

"This is an internal matter that is open, and it would be inappropriate for me to comment," said Justice Department spokesman Jorge Martinez.

The woman's lawyer has filed an appeal of her case that included an affidavit from her doctor at the Boston Medical Center.

"Jane, come here. Me Tarzan!" Ragno said at the beginning of the June 20 hearing, according to the affidavit.

"This was overtly racist and degrading and humiliating to both my patient and me, and egregious behavior from a United States official," wrote Dr. Sondra S. Crosby, who said her client had been beaten, raped and tortured as a political prisoner and her husband killed.

Ragno also allegedly called the weather number on speaker phone during the hearing to plan his weekend and told the court he was looking for a condo on the South Shore.

Sen. Edward M. Kennedy, who has a long history of working on immigration issues, said those seeking asylum have often witnessed "horrific violence," been tortured or seen family members murdered.

"Our asylum system is meant to offer safety and fairness to those seeking protection," said Kennedy (D-Mass.). "When that system breaks down because an immigration judge neglects his responsibility, it is not only a travesty to that individual seeking protection, but it makes light of the gravity of our humanitarian obligation.

"These asylum applicants have suffered enough. It is not too much to ask that they be treated fairly and with dignity," Kennedy added.

Immigration judges are technically Justice Department lawyers and effectively have lifetime positions. Ragno has been with the immigration division for three decades.

The judge refused comment on the matter, and media inquiries to the Immigration Court at the John F. Kennedy Federal Building were referred to a Justice Department public affairs office in Virginia.

Susan Akram, clinical associate professor at the Boston University School of Law, said there have been complaints against Ragno for years and efforts to challenge him both in appeals of cases and directly to the Justice Department.

"But the problem for a lot of immigration lawyers is, if they have to appear before him again, they have to worry about how far they can go because he can take it out on them and their clients," she said.

In 1996, a federal immigration appeals court slammed Ragno for "skeptical and hostile" demeanor.



The Medical Foundation, Summary Accounts

devastating for many of those seen.

What is also striking is that the history given by those detained in 1998 is no different from that described as having happened previously. People are still being arrested and held in incommunicado detention. It is too early to tell whether there are fewer people being tortured in Algeria, but what is clear is that the methods of torture have not changed since the Algerian War of Independence in the 1950s. The authorities are unable and unwilling to offer protection from terrorists and armed militias. They are not prepared to permit independent human rights investigations by professional monitors from the UN or internationally recognised human rights NGOs. Algeria is therefore not a place to which asylum seekers can safely be returned.

## Introduction

"Persecution is normally related to action by the authorities of a country. It may also emanate from sections of the population that do not respect the standards established by the laws of the country concerned. A case in point may be religious intolerance, amounting to persecution, in a country otherwise secular, but where sizeable fractions of the population do not respect the religious beliefs of their neighbours. Where serious discriminatory or other offensive acts are committed by the local populace, they can be considered as persecution if they are knowingly tolerated by the authorities, or if the authorities refuse, or prove unable, to offer effective protection."

Mr A was a professional sportsman who was out training on his bicycle when a car overtook him and slowed down to have a good look at him. The car drove away, turned back at a roundabout and drove directly at him. He was knocked off his bicycle and broke his legs. The assailants dragged him into their car and questioned him about why he did not behave in a more Islamic manner. The told him that they were from the GIA. They said that he would not be warned again, and kicked his broken leg. He lost consciousness, when he came round he was in a hospital. He had a large incision wound where his throat had been cut. He had been dumped by the side of the road in an isolated place. He felt that he was very lucky to have survived this but because of his injury he could not continue his professional career. He tried to report the assault to the security forces, who took a report from him - "I asked them what protection they could get for Algerians, they said all Algerians need protection including themselves." He therefore left the country.

Masked men carrying guns broke into the home of Ms B one night. They said that they were from the GIA, and wanted her to give them some information from the records of the company where she worked. On a previous occasion she had reported some harassment from the GIA to the police, who

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ABDELAZIZ BENNOUR,<br>Petitioner<br><br>v.<br><br>BRUCE CHADBOURNE, FIELD OFFICE<br>DIRECTOR, BUREAU OF<br>IMMIGRATION AND CUSTOMS<br>ENFORCEMENT, UNITED STATES<br>DEPARTMENT OF HOMELAND<br>SECURITY<br>Respondent | Civil No. 04-CV-12149-MLW |

**Notice of Appeal**

Now comes the Petitioner, by and through undersigned counsel, pursuant to Rule 4(a)(B), and hereby notices his appeal of the Court's order of January 3, 2005, allowing the government's motion to dismiss the petition for a writ of habeas corpus filed by the Petitioner in the above-captioned matter. See 28 U.S.C. §§1291 and 2253.

Respectfully Submitted,
The Petitioner,
By His Attorney,

Robert M. Goldstein
Mass. Bar No. 630584
20 Park Plaza, Suite 903
Boston, MA 02116
(617) 742-9015

Dated: February 24, 2005

No. 05-1418

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

ABDELAZIZ BENNOUR,

Petitioner – Appellant

v.

BRUCE CHADBOURNE, et al,

Respondents – Appellees

### NOTICE OF INTENT TO EXECUTE REMOVAL ORDER

Respondents-Appellees Bruce Chadbourne, et al., hereby provide notice to this Honorable Court of their intent to execute a removal order regarding the Petitioner-Appellant, Abdelaziz Bennour, on July 20, 2005.

                                      Respectfully submitted,

                                      MICHAEL J. SULLIVAN
                                      United States Attorney

By:    /s/ Mark T. Quinlivan
                                      MARK T. QUINLIVAN
                                      Assistant U.S. Attorney
                                      John Joseph Moakley U. S. Courthouse
                                      1 Courthouse Way, Suite 9200
                                      Boston, Massachusetts 02210
                                      617-748-3606

Dated: June 24, 2005